PATRICK E. MARTIN, Admr.

*v.*

THE CHICAGO AND NORTHWESTERN RAILWAY COMPANY.

*Opinion filed December 18, 1901—Rehearing denied February 5, 1902.*

1. INSTRUCTIONS—*when instruction to find for defendant should not be given.* An instruction to return a verdict for defendant should not be given unless the evidence, with all the reasonable inferences to be drawn therefrom, is so insufficient that any verdict returned for the plaintiff would have to be set aside, or unless the evidence is such that all reasonable minds would concur in the view that the defendant was not guilty.

2. RAILROADS—*reasonable care should be used to avoid injury to trespasser known to be in peril.* If the employees in charge of an engine know that a trespasser is on the track and in a position of peril, it is their duty to use reasonable care to avoid injury to him.

3. SAME—*when question of negligence is for the jury.* If the fireman on an engine sees an object on the track in time to notify the engineer and avoid injury if it should prove to be a man, but fails to do so, it is a question for the jury whether the company was not guilty of negligence, and whether that negligence was not wanton to the extent of willfulness.

4. SAME—*what is not sufficient to raise general duty of care.* If an engineer attempts to cross the elevated tracks of his employer, where the general public was forbidden to go, in going to the round-house for his engine, and is struck, while lying between the tracks, by an engine on an out-going train, to raise a general duty of care on the part of the railroad company toward him it must be shown that he was on the track in the discharge of his duty to his employer or that it was necessary to go that way to get his engine, and mere proof that other persons had been in the habit of going that way is not sufficient.

*Martin v. Chicago and Northwestern Ry. Co.* 92 Ill. App. 133, reversed.

WRIT OF ERROR to the Branch Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. SAMUEL C. STOUGH, Judge, presiding.

This is a case commenced in the superior court of Cook county by plaintiff in error to recover from defendant in error damages for the killing of James McDonough. The declaration contained three counts. The first avers

that on the 16th day of January, 1898, plaintiff's intestate
was in the employ of the defendant as a locomotive en-
gineer and earning $140 a month, and that while he was
crossing one of the defendant's tracks in the vicinity of
Forty-second avenue, in the city of Chicago, on his way
from his home to the shops, where he was to take an
engine on a trip for the defendant, while exercising due
care and caution for his own safety, he was accidentally
thrown or fell upon the track and rendered unconscious,
and that the servants of the defendant, but not fellow-
servants, operating a certain locomotive engine, reck-
lessly, carelessly and negligently drove said engine over
plaintiff's intestate and inflicted injuries resulting in his
death. The second count was like the first, with the
additional allegation that by the exercise of ordinary
care the servants of the defendant operating said engine
might have discovered the said James McDonough's po-
sition upon the track in time to have avoided the injury,
but that they did not exercise such care, but recklessly,
wantonly and negligently ran, managed and operated
said engine, so that it ran over plaintiff's intestate, caus-
ing injuries resulting in death. Two additional counts
were filed, the first setting out the employment and
wages, and averring that while plaintiff's intestate was
on his way to get his engine, preparatory to making a
trip upon defendant's road, he was either thrown or fell
upon one of the tracks and was rendered helpless, and
continued to lie upon said track, and that other servants
of the defendant were operating and managing a cer-
tain engine, not being fellow-servants of plaintiff's in-
testate; that it was in the daytime, the track in question
straight and clear, and the defendant's servants oper-
ating said engine did discover plaintiff's intestate, and
his position upon the track and his peril, in sufficient
time, by the exercise of reasonable care, to have avoided
the injury, but that they wantonly, recklessly and neg-
ligently ran said engine over plaintiff's intestate, etc.

A second additional count was filed and demurred to and the demurrer sustained. Plea of not guilty. The cause came to a hearing, and at the conclusion of all the testimony offered by both parties the trial judge directed the jury to render a verdict in favor of the defendant. Judgment upon the verdict for costs. The case was taken to the Appellate Court on a writ of error and there affirmed, and upon a certificate of importance by that court a writ of error is prosecuted from this court.

JAMES C. McSHANE, for plaintiff in error.

E. E. OSBORN, (LLOYD W. BOWERS, and A. W. PULVER, of counsel,) for defendant in error.

Mr. JUSTICE RICKS delivered the opinion of the court:

The facts disclosed by the record are, that James McDonough, plaintiff's intestate, would have been thirty-five years of age his next birthday. He was five feet ten inches in height; weighed 163 to 168 pounds; was a sober man, of good character and habits; had been married eight years; had four children and a wife; had worked on defendant's road as a fireman and engineer for fourteen or fifteen years and as engineer for seven years. His wife testified that she had never known him to be sick in any manner and that he had never had heart trouble. His run was to Janesville, Wisconsin, and return. On the day of his death he came in on his run between ten and eleven o'clock in the forenoon, ate his meal and went to bed. He was called a little before four o'clock in the afternoon to go and take his engine and go out upon a run. He dressed himself, took his dinner-bucket (which was a white tin bucket 6x9 inches) and his over-clothes and left his home at 4:15 to go to his engine, which was at the round-house, somewhere near half a mile northerly of where he lived. He was a little late and was in a hurry. On the north side of the railroad and opposite his house were the yards, shops and engine round-house

of the defendant. In these yards were a great many tracks that must be crossed or in some way gotten around to get to the stable where his engine was kept. Defendant's main line of road runs east and west along Kenzie street, and consisted of three tracks. The south track is for out-bound trains, the north one for in-bound through trains and the middle one for freights and passing tracks. Defendant, in compliance with an ordinance of the city, had its main tracks elevated, so that they were twelve or fifteen feet above the surface in the vicinity of the accident. At Fortieth avenue defendant had a station house, which, the evidence tended to show, was about this time, or prior to this time, abandoned. Around this station house were platforms, and the tracks were planked, so that the planking came up to the outer rail on the north and south sides of the road, but between the rails and between the several tracks there was no plank, but the space was simply filled in with gravel and sand. This station was on the north side of the tracks and was reached by a stairway from the street. On the south side of the tracks there were also a gate and stairway. On this day plaintiff's intestate left his home and apparently went up the stairway on to the platform opposite the station and started across the track, and for some reason not explained by the evidence fell between the rails of the first track, his head lying against or close to the south rail and his feet lying over the north rail, his lunch bucket and over-suit lying between the rails near him. An engine of defendant, drawing a caboose, in the charge of Samuel Cowan as engineer and Theodore J. Kirk as fireman, started on an out-bound trip from somewhere near Western avenue, and going west. In the caboose were the conductor, Silas Harrison, and two brakemen. The engine was of the type known as the Mogul, had six drive-wheels five feet in diameter, with a double set of trucks ahead of the drivers. The tender had two sets of double trucks, all of which, except the

front trucks of the engine, were equipped with the Westinghouse air-brake, and the caboose had a hand-brake at each end. At Hamlin avenue, about 1400 feet east of where McDonough was lying, the fireman discovered an object on the track which he says he did not then believe was a man, but which he watched continuously from the time he first saw it until the accident occurred; that from the time he first saw it he kept watching it, and said nothing to the engineer until he had reached a tower-house, which was about three hundred and sixty to three hundred and eighty feet east of where plaintiff's intestate was lying, and says that at that time and place he saw the dinner pail and saw enough to know that the object was a man, and then for the first time he informed the engineer that there was a man on the track. He states that at the time he first saw this object the engine was running from fifteen to eighteen miles an hour, and that it did not perceptibly decrease or increase its speed until the tower-house was reached; that at the time he told the engineer there was a man on the track he rang a bell; that the engineer applied the air-brake and reversed the engine; that he only gave the bell a ring or two; that no other signals or alarms were given, but he continued to watch the object, and that from the time he first saw it until it was passed over he did not see it move. The engineer could not say whether he opened the sand-box or not. The engine was stopped just after it had passed over the plaintiff's intestate, the body lying between the front wheels of the tender and the rear drive-wheels of the engine. The fireman immediately got out of the cab and he and the conductor dragged the body from under the engine. Both feet were cut off and the head had a large number of small cuts,—twelve or fifteen,—apparently extending clear around it, and a large cut over one temple, extending down to the ear. The fireman states that there was a small amount of muscular tremor or twitching discernible when he first drew

him out, and that that was the only evidence of life. The engineer and conductor testified that they saw no evidence of life whatever. Two or three persons saw the body immediately after the accident, and all the witnesses concur in the statement that there was not a great amount of blood flowing. Some of them fixed it at scarcely a perceptible amount, and others state that it was very noticeable. One or more of the bystanders testified that there was a pool of blood under the engine where decedent lay; that it was a foot or more across, and that a streak of blood could be seen from where the body was taken, to the platform of the railroad where it was laid. The undertaker testified that the under-clothing,—particularly the undershirt,—was saturated with blood, the greater portion being in the back. The pilot was the lowest point of the engine that passed over him, and the testimony was that that was about five inches above the top of the rail and at least eight inches above the road-bed, and there is little, if any, evidence tending to show that the body was rolled by the train passing over it. The condition of the clothing indicated that it was not. It was on Sunday, and there was about an inch of snow upon the ground, that had fallen a day or two previous. The day of the accident was clear and bright, and the body was struck by the engine about 4:22 o'clock in the afternoon. The wife testified that she learned of the injury within fifteen minutes from the time her husband left home. The body was lying a little west of Fortieth avenue when it was struck,—as near as we can judge, forty feet. The track was straight and the view unobstructed. At Fortieth avenue there is a sub-way for passing through the railroad embankment, and the bents supporting the bridge over this sub-way extended up above the track a few feet; but they were not covered over,—in fact were not high enough to cover over and make a bridge over the railroad,—and were of a dark color, and the engineer and fireman say interfered, to

some extent, with their vision. The evidence shows that there were other safer ways for McDonough to have gone to work, and why he went the way he did and how he came to be lying upon the track is not disclosed by the evidence. No trains but out-going trains used that track, and no other train had gone out that afternoon. No one saw him after he left home, and before the injury, except the engineer and fireman. The engineer testified that he did not see McDonough until after being notified by the fireman that there was a man on the track, and that after being notified he did all that could be done to avoid running over him, but was unable to stop the engine until it had struck him. Three engineers testified for the plaintiff,—and it was admitted that a fourth one, who was not present would testify to the same thing,—that they were expert in handling this sort of an engine, and that such an engine, traveling no faster than the testimony showed this was, if properly handled, could have been stopped within one hundred to one hundred and twenty-five feet.

In view of the fact that the clothing of the decedent bore no evidence of his having been rolled by the engine passing over him, and of the further fact that as the engine approached him the fireman and engineer said that he was lying with his face up, and also that he was lying with his face up when taken from under the engine, it is difficult to account for the manner in which he was killed and for the number of cuts shown to have been upon his head. No one knows how close his head was to the south rail. If it were very close it would be cut by the flange of the drive-wheels and crushed or bruised or cut. No autopsy was held, and it is not known whether his skull was crushed or not. One of his feet was cut off about the ankle and the other further up the leg, and the cases are exceedingly rare where such an injury would produce such sudden death.

The legal question arises from the giving of the instruction by the court directing a verdict for defendant.

This instruction was offered at the close of the plaintiff's evidence and denied, and again offered at the close of all the evidence and allowed.   If the evidence, with all the reasonable inferences to be drawn from it, was so insufficient that any verdict returned for the plaintiff under it would and ought to have been set aside, or if, from the whole of the evidence, together with all justifiable inferences to be drawn therefrom, reasonable minds would not differ, but would concur in the view that the defendant was not guilty, then the instruction should have been given, otherwise not.   (*Offutt* v. *World's Columbian Exposition*, 175 Ill. 472; *Wabash Railway Co.* v. *Brown*, 152 id. 484.) "Unless the court can say there is no evidence upon which the jury could, 'in the eye of the law, reasonably find for the plaintiff,' the issue must be determined by a jury." *Linnertz* v. *Dorway*, 175 Ill. 508.

Plaintiff in error insists that the above evidence, with the reasonable inferences to be drawn from it, sufficiently shows that his intestate was lying upon this track when run over by the engine, and was alive, and that he was killed by the engine.   He further contends that the evidence abundantly shows that the fireman saw his intestate in ample time to have informed the engineer and had him place his engine under control so that the accident could have been avoided, and that a failure to do so was such gross and wanton negligence that, notwithstanding plaintiff's intestate was a trespasser on the tracks at the place where he was killed, he was entitled to have the question submitted to a jury.   Defendant in error, on the other hand, contends that all the matters of fact have been decided by the Appellate Court, and cites a number of authorities that where that is so this court will not consider them.   As we understand it, no matter of fact has been decided by the Appellate Court or by the superior court, but that the court has said, as a matter of law, based upon all that the facts show and all reasonable inferences arising therefrom, that the plaintiff in

194—10

error was not entitled to have his case passed upon by the jury. There was no finding of fact at all by the Appellate Court. Its judgment was simply one of affirmance of the judgment of the superior court. True, there was an opinion by the Appellate Court, in which it expressed itself upon the facts as it viewed them. But the opinion is no part of the record. Error cannot be assigned on it and we are in no manner affected by it. *Traeger* v. *Mutual Building Ass.* 189 Ill. 314; *Ohio and Mississippi Railway Co.* v. *Wangelin,* 152 id. 138.

Defendant in error further contends that two things were necessary to be proved to entitle the plaintiff to recover: First, that decedent died as the result of the injuries sustained; and second, that such injury was due to the wrongful acts alleged in the pleadings; and maintains that there is no sufficient evidence supporting either of these propositions to justify the court in submitting the case to the jury. Upon the first of these requirements, we have the evidence that within ten or twelve minutes of the time the decedent was run over he had left his home, a block or two away, sober, in full possession of all his faculties, apparently as sound and well as he ever was, and generally in good health; that he was seen upon this track lying down; that he was run over, and when he was taken up there were slight evidences of life, and blood flowed. Being shown to be alive so recently before the accident, together with the evidences following it, rises to more than a scintilla of evidence, and, we think, are matters about which prudent minds might differ. It may be that blood would flow and twitchings of the nerves be present and the fatal injury received before the engine in question reached decedent; but such questions as that are matters proper for the consideration of the jury.

Upon the second proposition, it had as well be assumed, for the purpose of this opinion, that the decedent was a trespasser upon the right of way of defendant, and

that it owed him no duty until aware of his presence there and of the fact that he was in peril. The evidence shows that when the engine was 1400 feet away the fireman saw decedent. It is true, he says that at that time he had no idea that it was a man. It is also true that it was a place where the tracks were elevated, and where, by the ordinance of the city of Chicago introduced in evidence, it was a penal offense for any one to go not connected with the railroad and not in the discharge of his duty, and it can hardly be said that decedent was discharging a duty to the railroad in passing over these elevated tracks to go to his engine when other and safer ways were provided. But was it not a fact that an object, such as would attract attention such a distance, so upon the track at a place where it would be least expected, was sufficient to put those in charge of the engine on inquiry? And was it not the duty of the fireman, when he saw the object in this strange and unusual place for an object of that size to be, to at least call the attention of the engineer to it at once, and not wait to speculate as to whether it was an animate object, which the engine might kill, or an inanimate object, which might derail the engine and kill those operating it? Can there be any doubt in a reasonable mind, if the engineer, who had not seen this object and did not know of it until after he had passed the watch-tower, had been advised of its presence at Hamlin avenue, he could and would have so put his engine under control that neither of the possible accidents could have happened? He did stop it within less than three hundred feet, but it was then too late.

In a number of cases we have held that it is not the duty of the railroad company, or its servants in charge of its engines, to keep a look-out to avoid injury to those who are trespassers upon its grounds. (*Roden* v. *Chicago and Grand Trunk Railway Co.* 133 Ill. 72; *Wabash Railroad Co.* v. *Jones,* 163 id. 167; *Illinois Central Railroad Co.* v. *Godfrey,* 71 id. 500.) And we have also uniformly held that

when those operating the engine do know that a tres-
passer is upon the track and in a position of peril it is
their duty to use reasonable care to avoid injury to him.
(*Chicago and Alton Railroad Co.* v. *Logue,* 58 Ill. App. 142,
and 158 Ill. 621; *Lake Shore and Michigan Southern Railway
Co.* v. *Bodemer,* 139 id. 596; *Illinois Central Railroad Co.* v.
*Wren,* 43 id. 77; *Chicago and Northwestern Railway Co.* v.
*Barrie,* 55 id. 226.) In this case the track was shown to
be entirely straight for four miles. The train was run-
ning west toward the setting sun, and we are unable to
see how the view of the fireman could have been inter-
fered with by the bents that extended up the sides of the
track at the crossing of the sub-way, as the setting sun
at that time must have shown in almost a direct course
in front of the engine. The knowledge of this fireman
was the knowledge of the defendant, and if he neglected
his duty when he had knowledge that decedent was up-
on the track, and did not notify the engineer in time to
enable him to avert the injury, and could have done so,
then it was a question for the jury whether the defend-
ant was not guilty of negligence, and whether that neg-
ligence was not wanton and reckless to the extent of
willfulness. *Purcell* v. *Chicago and Northwestern Railway
Co.* 80 N. W. Rep. 682; *Lake Shore and Michigan Southern
Railway Co.* v. *Bodemer, supra; Chicago and Alton Railroad
Co.* v. *Logue, supra; Chicago West Division Railway Co.* v.
*Ryan,* 131 Ill. 474; *Keyser* v. *Chicago and Grand Trunk Rail-
way Co.* 56 Mich. 559; *Chicago and Northwestern Railway Co.*
v. *Barrie,* 55 Ill. 226; *Meeks* v. *Southern Pacific Railroad Co.*
56 Cal. 513.

We are not unmindful of the fact that there is a con-
flict in this evidence, but it was not the duty of the trial
court, nor is it our duty, to weigh the evidence and de-
termine where the greater weight lies or credence shall
be given. Upon a motion such as this, the evidence most
favorable to the plaintiff must be taken as true. (*Mc-
Gregor* v. *Reid, Murdoch & Co.* 178 Ill. 464; *Hays* v. *Northern*

*Pacific Railroad Co.* 74 Fed. Rep. 284.)   Nor are we called upon to find that this evidence should have been submitted to the jury, and that upon the evidence the jury should have found a verdict for the plaintiff.   We go no further than to hold that if a verdict had been rendered for the plaintiff upon this evidence, the trial court would not have been warranted in setting it aside for insufficiency of evidence to support it.

As this case may be tried again, it is proper that we should speak of another matter brought to our attention. During the progress of the trial the plaintiff offered to prove that other persons were, and had been for some time previous to the accident, in the habit of going upon this railroad at the place where plaintiff's intestate went. He states that his offer was to prove that those accustomed to use it were employees of the defendant.   The first count averred due care on the part of plaintiff's intestate, but the bare proof that he or other persons were in the habit of going upon this railroad at a point forbidden to the public would not be sufficient to relieve him from the position of a trespasser.   To raise a general duty of care from the defendant to plaintiff's intestate, it must be shown that he was there in the discharge of his duty to his employer, the defendant, or that it was necessary to go that way to reach his engine.   (*Wabash Railroad Co.* v. *Jones*, 163 Ill. 167.)   In that case, in speaking of persons passing over tracks of railroads at places other than highways, we say (p. 175):   "It may be conceded that there are cases where evidence of the character in question may be admissible for the purpose of determining the nature of an act.   The fact of general use by the public of a track, so as to create a probability of their presence, might make an act which would otherwise be merely negligent so reckless as to indicate a disregard for life or a general disposition to do injury." But in view of the fact that this track was an elevated track, twelve or fifteen feet above the street, and of the

further fact that this offer was but to show that employees were in the habit of going across at that place, we do not think that fact alone would be sufficient to either show due care on the part of plaintiff's intestate, or raise a general duty on the part of those operating engines to be constantly on the look-out to conserve the safety of persons so using the track.

The judgments of the Appellate Court and of the superior court of Cook county are reversed, and the cause remanded for such further proceeding as the parties may elect.

*Reversed and remanded.*