## John Whalen v. Utica Hydraulic Cement Co.

1. MASTER AND SERVANT—*Assumed Risks of Employment.*—Whether a certain danger is an assumed risk of the employment, is a question of fact for the jury.

2. PRACTICE—*Where Court Should Not Take Case from Jury.*—The court is not justified in taking a case from the jury where the state of proof is such that reasonable minds might reach different conclusions from the evidence offered.

Trespass on the Case, for personal injuries. Appeal from the Circuit Court of La Salle County; the Hon. HARVEY M. TRIMBLE, Judge presiding. Heard in this court at the April term, 1902. Reversed and remanded. Opinion filed July 18, 1902.

LEE O'NEIL BROWNE and BREWER & STRAWN, attorneys for appellant.

DUNCAN & DOYLE, attorneys for appellee.

MR. PRESIDING JUSTICE BROWN delivered the opinion of the court.

This was an action on the case brought by appellant

against appellee for personal injuries received by appellant while acting as an employe of appellee in its cement rock quarries. Plaintiff's declaration contained two counts charging defendant with negligence in not keeping its quarry in a reasonably safe condition, whereby plaintiff, while exercising due care, was injured by the falling of a mass of frozen earth and rock.

Defendant filed a plea of the general issue and a trial by jury was had. At the conclusion of the plaintiff's case defendant moved to exclude the testimony and instruct the jury to find the defendant not guilty, which motion was sustained and the jury returned a verdict of not guilty, as directed. Plaintiff's motion for a new trial was overruled and judgment was entered on the verdict. Plaintiff saved exceptions to the adverse rulings of the court and appealed to this court.

Appellee had been engaged in the manufacture of cement at Utica, in La Salle county, for many years. It mined cement rock during the greater part of the year by tunneling in the bluffs. During the winter it removed the stripping, consisting of eight or ten feet of overlying dirt and stone, from the cement rock in its open quarries. The frozen earth and stone composing the stripping was loosened and broken by blasting, further broken when necessary by men with picks, shoveled into small cars which ran on a track and were propelled by horse power, and drawn out of the quarry. The work was organized in departments, each man having only one kind of labor to perform. There were men who laid track as it was required, men who blasted, men who did pick work, men who did shoveling into the cars, men who removed the cars when filled and returned the empty cars to be filled. All were under the direction of a superintendent of appellee.

The shovelers worked in gangs of five or six. Each gang had two tracks upon which cars were loaded alternately. While a car was being loaded upon one track an empty car was placed upon the other. As soon as a car was filled the gang went to the other track and commenced filling the

empty car, while the loaded car was hauled away and an empty one placed in position to be loaded in its turn.

At the point where the accident occurred the stripping had been broken and thrown up by blasting.   It consisted of frozen masses of rock and earth.   One large mass was thrown up above the general surface and projected over the edge of the bank, appellant testified, about a foot, others, three to four feet, and one six feet.   It was eight or ten feet above the track.   An empty car was placed for loading opposite this overhanging mass and at the foot of the bank or sides of the quarry.   The bank sloped back from the track just as it had fallen or slipped down in the blasting so that the projecting mass overhung without overhanging the track.   The gang of shovelers, which included appellant, had finished loading a car on the east bank and went to load the empty car on the west track.   Appellant had no sooner taken the place he was obliged to take to load the car than the overhanging mass broke and fell, striking the sloping bank and then appellant, hurling him against the car and producing a compound fracture of the leg in two places and otherwise injuring him, so that he has ever since been partially disabled and only able to do light work. In describing the accident appellant said:

" We came over to that track and went in there to shovel, and I had not time to bend down, when it rolled clean down on top of me."

Appellant was forty-eight years old and earned $1.25 a day.   He was confined to his bed from March 17, 1899, to July of that year.   He was so seriously injured that the broken bones protruded through the flesh.   The attending physician testified the injuries were permanent.

The shovelers had nothing to do with the blasting, or cutting away or taking down the bank, or anything except to shovel the loose stripping, when prepared for them, into the car.   Appellant testified that he saw this mass was overhanging a little, but did not think it was dangerous; that he did not have time to look around at all; that he was obliged to stand where he did in order to shovel the stripping into the car.

The relation between appellee and appellant was that of master and servant. It is the duty of the master to use reasonable care to furnish the servant a reasonably safe place in which to perform his work and to use like care to keep the place in such condition; and the servant has the right to rely upon the master performing his duty without making a critical examination of his surroundings. Whether the danger was an assumed risk was a question of fact for the jury. Ross v. Shanley, 185 Ill. 390; City of LaSalle v. Kostka, 190 Ill. 130; Western Stone Company v. Muscial, 196 Ill. 382.

The court is not justified in taking a case from the jury where the state of the proof is such that reasonable minds might reach different conclusions from the evidence offered, together with all justifiable inferences to be drawn therefrom. Offutt v. Columbian Exposition, 175 Ill. 472; Martin v. C. & N. W. Ry. Co., 194 Ill. 138.

We are of the opinion that the evidence in this case falls within the rule above stated and that the trial court erred in directing a verdict of not guilty.

The judgment of the Circuit Court will be reversed and the cause remanded.