THE AURORA, ELGIN AND CHICAGO RAILWAY COMPANY,

*v.*

WILLIAM E. GARY, Admr.

*Opinion filed April 17, 1906.*

RAILROADS—*instructions stating the rule of wanton injury must have basis in evidence.* It is error, in an action against an electric railroad company for the alleged negligence of the defendant in running a car over the plaintiff's intestate, to give instructions stating the rule of willful or wanton injury, where the evidence shows that the motorman did all within his power to stop the car immediately upon discovering that the deceased, who had started to cross the track without heeding his warning, had stopped on the track and started to go back.

APPEAL from the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of DuPage county; the Hon. L. C. RUTH, Judge, presiding.

This is an action on the case, brought in the circuit court of DuPage county by appellee for the death of his intestate, Oresta J. Richardson, alleged to have been caused by the negligence of the appellant company. The cause was

tried before the court and a jury, and resulted in a verdict and judgment in favor of appellee for the sum of $2500.00. An appeal was taken to the Appellate Court from the judgment so entered, and the same has been affirmed by the Appellate Court. The present appeal is prosecuted from such judgment of affirmance.

HOPKINS, PEFFERS & HOPKINS, and JOHN A. RUSSELL, for appellant.

L. L. DEWOLF, and BOTSFORD, WAYNE & BOTSFORD, for appellee.

Mr. JUSTICE MAGRUDER delivered the opinion of the court:

Appellant is an electric railway company, whose tracks run from Chicago to Elgin and Aurora. Its main line with double tracks passes east and west through Wheaton, Illinois. At Wheaton it has a depot or waiting station. This depot is one hundred and eighty-eight feet west of the west line of Main street, where the accident occurred. Main street runs north and south across appellant's tracks. It is the first street east of appellant's depot, and is sixty-six feet wide. Main street crosses appellant's double tracks, and the Chicago and Northwestern railway tracks going north, and thence north across North Railroad street, a public business street. Appellant's tracks at Main street are fifty feet south of, and parallel with the Chicago and Northwestern railway tracks, and the Chicago and Northwestern railway tracks are from twenty-five to forty feet south of North Railroad street. The accident to appellee's intestate occurred at the point, where appellant's south track (used by cars going to Chicago) crosses the east line of Main street.

On March 12, 1903, at about 3:45 o'clock in the afternoon appellee's intestate, Oresta J. Richardson, a lady at that

time about fifty-nine or sixty years of age, approached appellant's south track—the one on which its cars go east to Chicago—walking on the sidewalk on the east side of Main street. Appellant's car started from the depot on its return trip to Chicago. The distance it had to run from its starting point to the east line of Main street, where appellee's intestate was struck, was two hundred and fifty-four feet, that is, one hundred and eighty-eight feet to the west line of Main street, and sixty-six feet additional for the width of the street. Appellant's cars were forty-seven feet long. Appellant's cars are run by means of a third rail, that is, a rail running parallel to the tracks, on which the car runs. From this third rail, by means of a shoe attached to the car, the current is obtained. At crossings of highways the third rail ceases, and the car runs over by means of its momentum. Appellant's car struck appellee's intestate, and then ran about forty feet east of the east line of Main street before it stopped. The right foot of appellee's intestate was crushed, and she was otherwise injured. She died about eighteen days after the accident.

Among other instructions, given for the appellee upon the trial below, were instructions numbered 5, 6 and 10, which are as follows, to-wit:

5. "The court instructs you that even if you believe from the evidence that the said Oresta J. Richardson was guilty of negligence at the time she was struck by defendant's electric car, yet, if you believe from the evidence in this case and the circumstances proven on the trial, that the servants of the defendant, in charge of the said car, operated the same at the said time in a grossly wanton and reckless manner, then you are instructed that the defendant is liable.

6. "The court instructs you that the question of whether the defendant's servants in charge of the electric car so operated the same at the said time, as to amount to such gross negligence as evidences willfulness, is a question for the jury to determine from all the facts and circumstances shown by

the evidence in this case; and if you find from such evidence and the facts and circumstances proven on the trial, that the said servants did so operate the said car, and that thereby the said Oresta J. Richardson received the injury charged in the declaration, then the defendant is liable, even if you believe from the evidence that the said Oresta J. Richardson was herself guilty of negligence.

10. "Even if the jury shall find from the evidence that the deceased was negligent in passing over the railway track at the time she was killed, yet, if the jury further believe from the evidence, and from all the facts and circumstances proved in the evidence, that the motorman in charge of the car, which struck the deceased, saw, or, in the exercise of reasonable diligence and ordinary prudence, could have seen her on said track in time to have avoided the accident, but that in disregard thereof he negligently, recklessly and wantonly allowed the car to run against the deceased, without taking reasonable precaution to warn her of danger, or to prevent the car from striking her, then the defendant is liable in this action."

We think the court erred in giving these instructions because there was no evidence in the record to support the theory that the deceased was wantonly or willfully killed by the defendant.

The motorman testified as follows: "I left the station the way we always do, and got to Main street, running at the rate of about seven miles an hour. As I got about half way between the station and the crossing I noticed a woman walking towards the track slowly, and to attract her attention I blew the whistle, two long and two short blasts, which is the regulation whistle for a crossing. When I saw she was going to cross the track, or stop in front of the car, I immediately applied the air [brake] and blew the whistle again, and she walked in front of the car, pretty near to the north rail. She turned, hesitated a little, and turned around with her head towards me and stooped down, at the same

time stepping sidewise back the way she came from. * * * I went right along until I got to Main street without applying the air. I did not see her going onto the track at that time. I was looking at her when she stepped on the track. I saw her go part way over the track. I saw her stop, turn and go back, and when I first applied the air, I was about six or seven feet from her. * * * Q. Now, I ask you what you did immediately when you saw she was going onto the track?—A. I applied the air. I was six or seven feet from her at that time. I saw her when she stepped onto the track."

It appears that, as soon as the motorman discovered that the deceased was about to step onto the track, he applied the air-brakes and made every effort to stop his car and avoid striking her. There was no dispute on the trial that, as soon as the motorman discovered that deceased did not see the car coming toward the crossing, or as soon as he discovered that she was going to stop on the track, he immediately applied the air-brakes. The evidence shows that the deceased started across the tracks, which would naturally lead the motorman to suppose that she would go across before he reached her. Instead, however, of going all the way across the track, she turned around and went back the same direction from which she came. After this movement on her part was discovered by the motorman, he made every effort in his power to stop the car. The evidence of all the witnesses concerning the surroundings was, that the view was entirely unobstructed so that Mrs. Richardson could easily have seen a car coming from the station towards Main street as she was crossing the tracks.

In *Feitl* v. *Chicago City Railway Co.* 211 Ill. 279, this court said (p. 289): "There was no evidence tending to prove wanton or willful conduct on the part of the defendant or any of its agents or servants. Every witness to the occurrence testified to the sudden application of the brakes, and there was no evidence of any intention or purpose not to dis-

221—3

charge any duty incumbent upon the defendant. The instruction to that effect was therefore proper. The trial court refused to give to the jury the twenty-fourth, twenty-fifth and twenty-sixth instructions, which were tendered by the plaintiff. The twenty-fourth directed a verdict for the plaintiff, although the deceased was guilty of negligence contributing to the accident, if the evidence showed that the motorman managed the car in a wanton or reckless manner. It was properly refused for want of any evidence on which to base it."

The views thus expressed in *Feitl* v. *Chicago City Railway Co. supra,* apply to the facts of the present case. These instructions, which presupposed that the conduct of the motorman in striking appellee's intestate was wanton and willful, were not based upon any evidence in the case to the effect that he wantonly and willfully injured the deceased. They were calculated to make the impression upon the minds of the jury, that the motorman had not merely been guilty of negligence, but that he had been guilty of actual wanton and willful conduct in striking the deceased. The giving of these instructions was error, and, as we think, prejudiced the case of the appellant in the minds of the jury.

It is unnecessary to discuss any other of the questions, so elaborately argued by counsel on both sides, inasmuch as we think the error in giving the fifth, sixth and tenth instructions above quoted is sufficient to require a reversal of the judgment. Accordingly, the judgments of the Appellate and circuit courts are reversed, and the cause is remanded to the circuit court for further proceedings in accordance with the views herein expressed.

*Reversed and remanded.*