## Elgin City Banking Company, Administrator de bonis non, Appellee, v. Chicago, Milwaukee & St. Paul Railway Company, Appellant.

### Gen. No. 5286.

1. Instructions—*what waives motion for peremptory.* Subsequent introduction of evidence waives a motion for a peremptory instruction.

2. Instructions—*how motion for peremptory must be made.* Written instructions must accompany motions to instruct as to an entire declaration, also as to separate counts where separate motions are made with respect to each count.

3. Instructions—*effect of refusal of peremptory.* The refusal of an instruction to find the defendant not guilty raises the question whether there was evidence fairly tending to show a cause of action for the plaintiff under some count of the declaration.

4. Instructions—*what proper upon right of recovery.* Instructions are proper which authorize a recovery if the plaintiff has

proved his case as alleged in his declaration or some count thereof.

5. NEGLIGENCE—*non-obedience of ordinance.* The failure to ring a bell as required by ordinance if the proximate cause of the injury to an employe, constitutes actionable negligence.

6. NEGLIGENCE—*what constitutes wanton.* Held, under the evidence, that the jury might properly find that the servants in charge of a locomotive engine who saw the perilous position of the plaintiff's intestate and who did nothing to warn him of his danger, were guilty of negligence wanton and wilful in character.

7. CONTRIBUTORY NEGLIGENCE—*reliance upon obedience of ordinance.* A servant is entitled to rely on obedience by his master of an ordinance to the protection of which he is entitled.

8. MASTER AND SERVANT—*what risks not assumed.* An employe does not assume the risk of his employer's negligence, nor does he assume the risk of being injured by the negligence of other servants of his employer who are not his fellow-servants.

9. MASTER AND SERVANT—*what not an assumed risk.* A section hand working in railroad yards does not assume the risk of injury resulting from disobedience of an ordinance and the switching of cars thereunder in a negligent manner in the absence of evidence showing that it was customary to disobey such ordinance and to do the switching in the negligent manner which caused the injury.

10. ORDINANCES—*when provision not repealed.* A provision of an ordinance is not repealed by a subsequent ordinance containing the same provision.

11. ORDINANCES—*effect of repeal upon existing rights.* The repeal of an ordinance is ineffective as to any act done or any right accrued or any claim arising under the former law.

12. ORDINANCES—*effect of, requiring ringing of bell.* If an injury results from failure to ring a bell a cause of action is not conferred by an ordinance requiring the ringing but the ordinance and its disobedience tend to establish a cause of action.

Action in case for death caused by alleged wrongful act. Appeal from the Circuit Court of Kane county; the Hon. DUANE J. CARNES, Judge, presiding. Heard in this court at the October term, 1910. Affirmed. Opinion filed April 6, 1911. *Certiorari* denied by Supreme Court (making opinion final).

JOHN A. RUSSELL, for appellant.

ROY R. PHILLIPS, for appellee; WALTER E. HEALY and G. R. BEVERLY, of counsel.

MR. JUSTICE DIBELL delivered the opinion of the court.

On January 7, 1907, William Olhaber, while at work

366    APPELLATE COURTS OF ILLINOIS.

Elgin City Banking Co. v. C., M. & St. P. Ry. Co., 160 Ill. App. 364.

as a section hand for appellant, was struck by a moving freight car of appellant, knocked down, run over and killed. He left a widow and four small children who were supported by him. The administrator of his estate brought this suit against appellant to recover damages for the pecuniary injuries resulting to the widow and next of kin from his death. Plaintiff had a verdict for $1,750 and judgment thereon, from which defendant below prosecutes this appeal. We affirmed the judgment and afterwards granted a rehearing on account of the very earnest insistence of appellant that we had misapprehended the evidence.

Each count of the declaration charged the operation of the car, the location of the tracks, the employment of deceased as section man, and that he was in the exercise of due care, and that the servants of appellant in charge of the engine and cars by which he was injured were not his fellow-servants, and that he left a widow and children who were injured by his death. The first count charged that appellant's servants in charge of the engine and cars in question negligently, improperly and wrongfully operated, managed and drove said locomotive and cars, thereby causing Olhaber's death. The second count charged that the same servants negligently, wilfully and wantonly operated, managed and drove said locomotive and cars, and thereby caused Olhaber's death. The third count charged that Olhaber was proceeding in a northerly direction in a switch yard, in the performance of his duties as section man, and that such other servants of appellant in charge of said engine and cars were driving said engine and cars in a northerly direction, and negligently failed to give Olhaber any warning of the approach of said engine and cars, thereby causing his death. The fourth count alleged an ordinance of the city of Elgin requiring the bell of each locomotive engine to be rung continually while such engine was running in the city, and that the servants

in charge of said engine and cars negligently failed to
ring said bell, thereby causing Olhaber's death. The
fifth count charged that the cars were being pushed
northerly by said engine located at the south end
thereof, and that appellant wrongfully failed to have
any brakeman or other person stationed upon the
northerly car, but pushed said cars north without any
person in charge thereof, and thereby caused the death
of Olhaber. The sixth count charged that these were
freight cars, that the engine was south of them and
pushing them north, and that Olhaber was also going
northerly in the yard, and that appellant negligently
failed to have a brakeman stationed on the northerly
car, and that the brakes on said cars were not oper-
ated by any power applied from the locomotive en-
gine, and that said car was wrongfully pushed in said
northerly direction without any person in charge
thereof, and thereby Olhaber was killed.

At the close of appellee's evidence appellant moved
the court to exclude the evidence and to direct a ver-
dict for defendant, and requested the court to in-
struct the jury "We, the jury, find the defendant not
guilty." This was denied, and an exception preserved.
Thereafter appellant made a like motion as to each
count of the declaration separately, but did not offer
a written instruction addressed to each separate count.
These motions were denied, and exceptions preserved.
Thereafter appellant offered evidence in its behalf. It
thereby waived said exceptions. It renewed these mo-
tions at the close of all the evidence, and again ten-
dered an instruction to find the defendant not guilty.
The separate motions then made as to each count of
the declaration were not accompanied by any written
instruction concerning such count of the declaration,
and were therefore properly denied. On the hearing
of these motions at the close of all the evidence the
appellee became entitled to the benefit of the proof in-
troducd by the appellant. Langan v. Enos Fire Es-

cape Co., 233 Ill. 308; Goldie v. Werner, 151 Ill. 551; Ames & Frost Co. v. Strachurski, 145 Ill. 192. The refusal of the instruction to find the defendant not guilty raises the question whether there was evidence fairly tending to show a cause of action for appellee under some count of the declaration. Appellant contends that it was not negligent; that deceased was not exercising due care but was guilty of contributory negligence, and that deceased assumed the risk of the conditions which caused his death.

The general course of appellant's railroad through the country is east and west, and therefore the tracks are called east bound and west bound, and the railroad men frequently call the directions east and west. But at the place where the accident occurred the direction of the railroad was north and south. These yards were inside of the city of Elgin, and on the west side of the Fox river. The so-called west bound track was immediately adjoining the Fox river, and trains regularly ran north thereon. The third track west of the river was the east bound main track, on which trains regularly ran in a southerly direction at that point. Between those two tracks was a passing track, with switches connecting with each of the other tracks, so that a train coming from either direction could go upon the passing track to permit another train coming from behind it in the same direction to pass. West of the east bound main track was a short tool house stub track, entered from its south end, and a tool house west of it. North of the stub end of the tool house track was a switch leading north whereby cars could pass west from the west bound main onto other tracks, and then another switch near a high board fence by which cars coming over that switch could be thrown upon a certain scale track or upon another track still further west. A freight train came from the south on the west bound main and backed over onto the passing tracks, and thereafter another freight train came

from the south on the west bound main, and a passenger train, west bound, was about due, and it became necessary for the first freight train, which was number 93, to leave the passing track for a track further west in order that this second west bound freight might occupy the passing track. To accomplish this the engine of train number 93 passed around train number 93 and came upon the passing track south of that train and hitched onto the caboose at the rear of the train, and then went south, pulling the caboose and eleven freight cars over the cross-over and onto the east bound track. It was then pushed north to the switch north of the tool house, which was set so as to enable it to run in upon the switch tracks west of the east bound main. McNirney was the section foreman and Olhaber and Lamp were section men under McNirney. About 2:20 or 2:30 in the afternoon of the day in question McNirney and his men were to go north to do certain repairing. They went to the tool house, secured the necessary tools and materials, and started north along the west side of the tracks. McNirney carried a pail of spikes and a spike maul, and Olhaber some rail braces. After they had proceeded north a short distance McNirney sent Lamp back to the tool house to get a certain chisel, and Lamp went back and went into the tool house. McNirney and Olhaber walked along a path just west of the track upon which train 93 was shoved north. At the place where the switch stand was to throw the cars onto the scale track or to the track west of it, the distance between the high board fence and the west rail of the track was 7.4 feet. The freight cars projected west beyond the rail 2.7 feet, so that there was a space between the freight car and the board fence of 4.7 feet. A person passing along could go either side of the switch, but the switch was rather nearer the fence and the traveled path seemed to lead between the track and the switch stand. McNirney and Olhaber had walked side by side until they approached this switch,

when it became necessary for Olhaber to drop behind
McNirney. Just as they were about at the switch ap-
pellant contends that Olhaber started across the track.
Olhaber and McNirney were both struck by the north
freight car. McNirney was knocked against the fence.
Olhaber was knocked down upon the track, and he
went under the train and both of his feet were cut off.
McNirney sprang to his feet, saw Olhaber under the
train, and gave signals to stop the train. These were
communicated by the fireman, on that side of the en-
gine, to the engineer, and the train was stopped after
several cars had passed over Olhaber. The latter was
then taken out from under the train, and died in a few
minutes.

Several items of proof are to be considered in de-
termining whether appellant was negligent. The en-
gine was at the south end of a string of twelve cars;
or, in other words, was more than twenty-five rods
back of the front end. The air brake apparatus on
these cars was not attached to the engine, and could
not be used to suddenly stop the train. When the train
first began the movement north, after having passed to
the south to go upon the east bound track, a brakeman
was on top of one of the cars, and he saw McNirney
and Olhaber along by the side of the track along which
it was intended to send these cars. He soon after got
off to adjust certain switches for the other freight
train, and from that time on no man was on the top
of this cut of cars. The engineer was on the east side
of the engine and could not see the west side of the
track over which he was to pass, and did not see these
men. One brakeman was on the platform of the ca-
boose at the rear of the train. The conductor was
several hundred feet away attending to other duties.
When Lamp came out of the tool house Olhaber had
been run over, and McNirney had regained his feet
and was waiving his arms as a signal to stop. Lamp
testified that at that time the train was going ten miles
per hour. The engineer testified that its speed was

Elgin City Banking Co. v. C., M. & St. P. Ry. Co., 160 Ill. App. 364.

about six miles per hour; the fireman that its speed was five or six miles an hour. The brakeman who was last upon the train testified that its speed was six or seven miles per hour; another brakeman that he thought the speed was not over six or seven miles per hour; the conductor, who was not present, thought its speed was four or five miles per hour; but it was proved that he had said in the presence of others that it was going seven or eight miles an hour, and maybe faster. Under these circumstances it was a fair question for the jury whether the speed of this train at that point was not negligent in view of the fact that the fireman and one brakeman knew of the position of Mc-Nirney and Olhaber, and knew that they appeared to be unconscious of the approaching cars. The ordinance of the city required the bell to be constantly ringing while the engine was in motion. Lamp testified that when he came out of the tool house the engine had nearly reached him, and that the bell was not ringing. The fireman testified positively that it was ringing. One brakeman testified that it was ringing when they started north, but he did not know whether it was ringing after that. The other two brakemen did not know whether it was ringing. The engineer testified that it was ringing, but he admitted that in a conversation thereafter with one Beverly he stated that he had no distinct remembrance whether the bell was ringing or not; that it was not customary to ring the bell in the yards, and that probably it was not ringing. The conduct of McNirney and Olhaber indicates that they did not hear the bell, because if they had heard it behind them the instinct of self-preservation would naturally have caused them to look back or to withdraw further from the track. Under all these circumstances it was a fair question for the jury whether the bell was ringing or not. If it was not ringing, then appellant was guilty of negligence in failing to obey that ordinance of the city. After the train started north and the head brakeman had left the train and

the engineer was where he could not see the west side of the track, the fireman was the one person who could see and did see McNirney and Olhaber. He had his head out of the west window of the engine cab, and he saw them going north, and he saw that they appeared to be talking to each other, and he testified that they appeared to be unconscious of the presence of the train coming behind them. He says they were in the clear, and that they were three feet from the rail; but if so, that would be only three-tenths of a foot outside of the line of the cars coming behind them. He could not fail to see that the slightest variation on their part to the east of the path they were traveling at the instant when the car should reach them, would necessarily cause them to be struck and would endanger their lives. He knew that the switch was there. He knew that in that distance of 4.7 feet a switch stand stood nearly in the middle, and that there would be danger that there they would be close to the track. The fireman and the rest of the train crew were not fellow-servants with these section men. He gave them no warning, unless the ringing of the bell. He saw that they apparently did not hear the bell, if it was ringing. There were two things he could have done that would have protected these men. There was a whistle on the engine, and he could have caused it to be blown and danger signals to be given therewith; he could have caused the speed of the train to be slackened. He did neither of these things, but trusted to luck that when the cars actually came up with these men they would still be at least three inches out of the line of the cars. The acts and omissions of this fireman were the acts and omissions of appellant. This proof not only required the court to submit to the jury the question whether appellant was negligent, but the jury might well find from this evidence that this conduct of appellant's servants who saw the perilous position of deceased and who did nothing to warn them was wanton and wilful. As said in Martin v. C. & N. W. Ry. Co., 194

Ill. 138: "The knowledge of this fireman was the knowledge of the defendant; and if he neglected his duty when he had knowledge that decedent was upon the track and did not notify the engineer in time to enable him to avert the injury, and could have done so, then it was a question for the jury whether the defendant was not guilty of negligence and whether that negligence was not wanton and reckless to the extent of wilfulness." In Chicago Term. Tr. R. R. Co. v. Gruss, 200 Ill. 195, the court said: "We are of opinion that the evidence tended to prove that appellant was guilty of wantonly backing its train against the appellee and injuring her as charged in the declaration. It appears that the train ran back a distance of one hundred feet after the brakeman had discovered and knew her perilous position on the bridge. As the engineer testified he could have stopped the train within thirty feet after having received a signal to stop, it was a question for the jury under all the circumstances in evidence whether appellant's servants in charge of the train were guilty of wilfulness of wantonness or not." In I. C. R. R. Co. v. Leiner, 202 Ill. 624, numerous cases are collected upon the subject of what amounts to wilful or wanton conduct. It was there held that to constitute wilful and wanton negligence it was not always necessary to prove that the defendant's servants were actuated by ill-will towards the plaintiff. The court there quoted with approval the following from Thompson on Negligence: "An entire absence of care for the life, the person or the property of others, such as exhibits a conscious indifference to consequences, makes a case of contructive or legal wilfulness such as charges the person whose duty it was to exercise care with the consequences of a wilful injury." In E. J. E. & E. Ry. Co. v. Duffy, 191 Ill. 489, the court said: "The evidence tends to prove that the train was going at a high rate of speed around a sharp curve where the view was obstructed by a high embankment, approaching a street which was much trav-

374    APPELLATE COURTS OF ILLINOIS.

Elgin City Banking Co. v. C., M. & St. P. Ry. Co., 160 Ill. App. 364.

eled, giving no warning by ringing of bell or sound-
ing of whistle; and this testimony, without passing
upon its weight, or whether it was overcome by other
evidence, tended to prove the charge of wilfulness and
wantonness in the management of the train." In L.
S. & M. S. Ry. Co. v. Bodemer, 139 Ill. 596, the court
defined the degree of negligence which the law con-
siders equivalent to a wilful or wanton act as "such
a gross want of care and regard for the rights of others
as to justify the presumption of wilfulness or wanton-
ness." In P. C. C. & St. L. Ry. Co. v. Kinnare, 203
Ill. 388, each count of the declaration was based on a
charge of wilful and wanton negligence, and neither
count alleged that the deceased was exercising any
care for his own safety, and the court there said:
"The evidence on the part of the plaintiff tended to
prove that deceased was in plain view of defendant's
engineer, who was looking toward him; that the tender
had a sloping top, and the engineer could see the rails
at a distance of seventy feet from the engine, and could
see the deceased at a less distance; that the engineer
saw him and backd the engine slowly toward him with-
out warning of any kind; that deceased remained in
the same position as long as the engineer saw him; and
the engine could have been readily stopped, but the
engine continued backing up without warning until the
accident. This evidence fairly tended to prove the
averments of the declaration." We are of opinion
that the proof in this case above recited required the
court to submit to the jury the question whether ap-
pellant's servants in charge of this train were not
guilty of wilful and wanton negligence within the
meaning of the foregoing authorities.

In arguing the question whether deceased was in the
exercise of due care for his own safety appellant as-
sumes that McNirney and he knew that the second
west bound freight had come in from the south, that
it was necessary that it be placed on the passing track
to let a west bound passenger train go by, which was

about due, and therefore that they knew that it was necessary that the passing track be cleared of train number 93, and that it should go either upon or beyond the east bound track. We are of opinion that the evidence does not show that either McNirney or deceased knew that the second freight train had come in and that train number 93 would have to be placed or was about to be placed west of the passing track. The last that McNirney saw of train 93 before the accident was when he went to the tool house, and train 93 was then standing still on the passing track. There is no proof that either he or deceased knew that it was moved therefrom or would be required to move therefrom. Again, the evidence shows that a little way north of the switch by which train 93 was pushed from the east bound tracks over to the switch in question, an east bound freight train stood. It was apparently ready to start south on the east bound track. That was the track over which it would pass. McNirney and Olhaber would naturally be watching to keep out of the way of that train. They would not naturally expect that cars would be projected north by an engine in the rear directly towards that standing train and at a speed of perhaps ten miles per hour. The jury could reasonably find from the evidence already recited that the bell on the engine at the rear of the train 93 was not rung. Deceased had a right to rely on obedience by appellant to the ordinance requiring that bell to be rung. I. C. R. Co. v. Gilbert, 157 Ill. 354; St. L., A. & T. H. R. R. Co. v. Eggmann, 161 Ill. 155; East St. Louis Ry. Co. v. Eggmann, 170 Ill. 538; Dukeman v. C. C. C. & St. L. R. R. Co., 237 Ill. 104; Cook v. C. R. I. & P. Ry. Co., 153 Ill. App. 596, in which latter case the Supreme Court refused a *certiorari* on June 17, 1910.

The fireman testified that just before the head car reached the deceased the latter turned and started across the track, and he then, when the head car appeared to be about two feet from these men, first started to cause the engineer to stop. There are rea-

sons for not giving absolute credence to the testimony
of the fireman that Olhaber started to cross the track.
But if he did, yet in view of all the evidence we are of
opinion it was still a question for the jury whether
deceased was in the exercise of due care for his own
safety or was guilty of contributory negligence.

Was the risk assumed by the deceased? He had
been working as section man in those yards off and on
for fifteen years. Appellant insists that everything
was done by appellant at this time in the usual manner.
It was customary for engines to switch cars from one
track to another. There was no proof that it was
customary to disobey the ordinance requiring the ring-
ing of the bell, nor that it was customary to back a
string of cars over switches at a speed of seven or ten
miles per hour with no one upon the cars to warn of
their approach, and with no air brakes attached with
which the cars could be quickly stopped. An employe
does not assume the risk of his employer's negligence,
nor does he assume the risk of being injured by the
negligence of other servants of his employer who are
not his fellow-servants. Hartley v. C. & A. R. R. Co.,
197 Ill. 440; C. & E. I. R. R. Co. v. White, 209 Ill. 124;
Ill. Third Vein Coal Co. v. Cioni, 215 Ill. 583; Klofski
v. Railroad Supply Co., 235 Ill. 146; Gathman v. City
of Chicago, 236 Ill. 9.

Appellee offered in evidence the ordinance upon
which the fourth count was based. It read, "The bell
of each locomotive engine shall be rung continually
while such engine is running within said city." Ap-
pellant objected to its introduction on the ground it
had been repealed since this accident, and in the ab-
sence of the jury offered to the court in support of the
objection an ordinance adopted on April 23, 1907. It
contained a provision on the subject of ringing the
bell of an engine, of exactly the same meaning and
containing almost the same words as the ordinance
upon which the fourth count was based. It also con-
tained the following: "All ordinances and parts of

ordinances in conflict with the provisions of this ordinance are hereby repealed.'' As the provisions were the same, the enactment here declared upon was not repealed. But again, section 2 of chapter 131 of the Revised Statutes enacted that ''the provisions of any statute so far as they are the same as those of any prior statute shall be construed as a continuation of such prior provisions and not as a new enactment.'' Therefore, the second ordinance was a continuation of the first as to the subject of the ringing of an engine bell. But if this ordinance declared upon had been absolutely repealed and nothing substituted for it still section 4 of the same statute provides that no new law shall be construed to repeal a former law, whether such law is expressly repealed or not, as to any act done or any right accrued or any claim arising under the former law, save only that the proceedings shall thereafter conform so far as practicable to the laws in force at the time of such proceeding. This was construed to apply to such amendatory legislation in People v. Zito, 237 Ill. 434. Again, this ordinance did not give the right of action declared upon in the fourth count, but the ordinance was only evidence tending to show that appellant was negligent, because it disobeyed said ordinance requiring the ringing of a bell. If appellant was negligent in not obeying that ordinance, and because of that negligence a person was injured, the act so negligently done on January 7, 1907, while the ordinance was in force, could not be made a non-negligent act afterwards by the adoption of another ordinance on April 23, 1907, repealing the former. But still further, even if the ordinance had been repealed, and if because thereof the cause of action stated in the fourth count could not be maintained, still the ordinance was competent evidence for its bearing on the question whether deceased was exercising due care for his own safety or was guilty of contributory negligence. He had a right to expect appellant to obey the ordinance then in force, and to rely upon its doing so,

378 Appellate Courts of Illinois.

Elgin City Banking Co. v. C., M. & St. P. Ry. Co., 160 Ill. App. 364.

and if the bell was not rung behind him, then the ordinance tended to show that he was not negligent in acting on the assumpition that no train or engine was approaching from that direction.

It is argued that instruction number one given for appellee was erroneous. It was approved in C. & A. R. R. Co. v. Pearson, 184 Ill. 386, and Dickson v. Swift Co., 238 Ill. 62, and the arguments of appellant against it are answered in the latter case. It is argued that instruction number two given for appellee was erroneous. It authorized a recovery if from the evidence the jury believed the risk was not assumed and that Olhaber was in the exercise of ordinary care for his own safety, etc., and if the accident was caused by the negligence of appellant as charged in the declaration or some count thereof. It is argued that this was erroneous because one count was upon wilful and wanton negligence and there was no evidence tending to show wilfulness or wantonness. On the contrary, as already stated, we conclude that there was evidence on that subject sufficient to go to the jury. But if not, still this instruction is not at all like that disapproved in A. E. & C. Ry. Co. v. Gary, 221 Ill. 29, upon which appellant relies. Instructions which authorize a recovery if plaintiff has proved his case as alleged in the declaration or some count thereof have been approved in many cases. H. & St. J. R. R. Co. v. Martin, 111 Ill. 219; Penna. Co. v. Backes, 133 Ill. 255; C. & E. I. R. R. Co. v. Filler, 195 Ill. 9; Kirk & Co. v. Jajko, 224 Ill. 338. Appellant has not discussed at length the instructions which it requested and the court refused, and we think it sufficient to say of them that to some extent they were argumentative, and that so far as they were correct they were embodied in given instructions.

We find no reversible error in the record, and the judgment is therefore affirmed.

*Affirmed.*